FILED

2019 Sep-11  PM 05:30
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHAWNA STEWART,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 2:18-cv-01930-CLM** |
| | ) | **ORAL ARGUMENT REQUESTED** |
| **JONES UTILITY and** | ) | |
| **CONTRACTING CO., INC. et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| | ) | |

---

## PLAINTIFF'S MOTION FOR RECONSIDERATION OF
## ORDER PURSUANT TO
## FEDERAL RULES OF CIVIL PROCEDURE RULES 59 AND 60 AND
## MEMORANDUM OF LAW IN SUPPORT THEREOF

---

Scott Morro (ASB-4954-C30M)
MORRO LAW CENTER, LLC.
P.O. Box 1644
1501 Decatur Highway
Gardendale, AL 35071
Telephone: (205)631-6301
Fax: (205) 285-8241
morrowlawcenter@bellsouth.net

*Attorney for Shawna Stewart, Plaintiff*

# Contents

I.   Introduction. ...................................................................................1

II.   Applicable legal standards, arguments and authorities.................1

   A.   Federal Rules of Civil Procedure Rule 59(e) ..........................................1

   B.   Federal Rules of Civil Procedure Rule 60(b)(1)(3)(6)...........................3

   C.   Discrete acts of retaliation.......................................................4

   D.   Retaliation in the post-employment context. ..........................................7

   E.   Statement of Facts giving rise to hostile work environment claim and discrete retaliatory acts under EEOC Charge 420-2018-01303. ..........11

III.  Count Three alleges a discrete act under Title VII that is timely filed under EEOC Charge 420-2018-01303. ................................................................16

IV.  Count Four alleges a discrete retaliatory act under the ADA that is timely filed under EEOC Charge 420-2018-01303. .....................................................17

V.  Counts One and Two are viable Hostile Work Environment claims under the Continuing Violation Doctrine, Equitable Tolling and Equitable Estoppel.19

VI.  Stewart's response to Defendants' Motions to Dismiss. ...........................21

COMES NOW the Plaintiff, Shawna Stewart ("Stewart"), by and through her attorney of record, Scott T. Morro, and respectfully files this Motion for Reconsideration of this Honorable Court's Order dated August 15, 2019 dismissing Stewart's federal claims and declining to exercise supplemental jurisdiction over Stewart's state law claims against Defendants Jones Utility and Contracting Co., Inc. ("Jones Utility"), Richard Jones ("R. Jones") and Patricia Jones ("P. Jones") pursuant to the Federal Rules of Civil Procedure Rules 59(e) and Rule 60.  As grounds for such reconsideration Stewart offers the following:

## I.   <u>Introduction.</u>

This Court's Order dated August 15, 2019 (Doc.37) erroneously dismissed Stewart's federal claims. This Court's Order and arguments from Motion to Dismiss Hearing adopted and incorporated by reference cited timeliness as the grounds for dismissal in this matter. (Hearing Transcript 08/14/2019, p.47-52)

For the reasons contained herein, Stewart respectfully requests reconsideration of the Court's August 15, 2019 Order dismissing her federal claims with prejudice and dismissing her state law claims without prejudice in favor of the Defendants. (Doc. 37)

## II.   <u>Applicable legal standards, arguments and authorities.</u>

### A. <u>Federal Rules of Civil Procedure Rule 59(e)</u>

Federal Rules of Civil Procedure Rule 59(e) states in pertinent part:

**New Trial; Altering or Amending a Judgment.**
(e) **Motion to Alter or Amend a Judgment**. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

The standard of reconsideration generally accepted and applied by the U.S. Alabama Northern District Courts is as follows:

> "In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly." *Rueter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 440 F. Supp. 2d 1256, 1267 (N.D. Ala. 2006). "Indeed, as a general rule, '[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice.'" *Id*. at 1268 (quoting *Summit Med. Ctr. of Ala., Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003))

Whether to grant a motion to reconsider under Federal Rule of Civil Procedure 59(e) or 60(b) is within the discretion of the trial court. *See Smith v. Casey*, 741 F.3d 1236, 1241 (11th Cir. 2014). A motion to reconsider "must demonstrate why the court should reconsider its prior decision and 'set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" *Fid. & Deposit of Md. v. Am. Consertech, Inc.,* No. 06-0338-CG-M, 2008 WL 4080270, at *1 (S.D. Ala. Aug. 28, 2008) (quoting *Cover v. Wal-Mart Stores, Inc*., 148 F.R.D. 294 (M.D. Fla. 1993)).

Three grounds justify reconsideration of an order: when a party submits evidence of (1) "an intervening change in controlling law," (2) "the availability of new evidence," or (3) "the need to correct clear error or manifest injustice." *Wallace*

*v. Holder*, 846 F. Supp. 2d 1245, 1248 (N.D. Ala. 2012) (quoting *Summit Med. Ctr. of Ala., Inc. v. Riley,* 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003)). "[R]econsideration of an order is an extraordinary remedy and is employed sparingly." *Rueter v. Merrill Lynce, Pierce, Fenner & Smith, Inc*., 440 F. Supp. 2d 1256, 1267-68 (N.D. Ala. 2006). Motions for reconsideration should not be a "knee-jerk reaction to an adverse ruling." *Id*. (quoting *Summit Med. Ctr. of Ala., Inc*., 284 F. Supp. 2d at 1355). *Goostree v. Liberty Nat'l Life Ins. Co*. (N.D. Ala., 2019)

## B. <u>Federal Rules of Civil Procedure Rule 60(b)(1)(3)(6).</u>

Federal Rules of Civil Procedure Rule 60 states in pertinent part:
**Relief from a Judgment or Order**
 (b) **Grounds for Relief from a Final Judgment, Order, or Proceeding**. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
    (1) mistake, inadvertence, surprise, or excusable neglect;
    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
    (6) any other reason that justifies relief.

 Rule 60(b) allows a district court to relieve a party from a final judgment for multiple reasons. Fed. R. Civ. P. 60(b). The expressly enumerated reasons that could conceivably apply to Horton's allegations are "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)" and "fraud, misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(2)-(3). Further, Rule 60(b)(6) allows the district court

3

to grant relief for "any other reason that justifies relief" in addition to those expressly listed in subsections (1) through (5). Fed. R. Civ. P. 60(b)(6). *Horton v. Hand* (11th Cir., 2019)

In the instant matter there is a need to correct clear error and manifest injustice pursuant to Fed. R. Civ. P. Rule 59(e), mistake, inadvertence, or excusable neglect pursuant to Fed. R. Civ. P. Rule 60(b)(1), fraud, misrepresentation, or misconduct by the opposing party pursuant to Fed. R. Civ. P. Rule 60(b)(3) and any other reason that justifies relief Fed. R. Civ. P. Rule 60(b)(6). For the reasons stated herein Stewart respectfully requests that this Honorable reconsider its Order dismissing her federal and state law claims.

## C. <u>Discrete acts of retaliation.</u>

Title VII prohibits retaliation in the employment context by making it "an unlawful employment practice for an employer to discriminate against any of his employees [...] because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "A prima facie case of retaliation contains three elements: first, the plaintiff engaged in statutorily protected conduct; second, the plaintiff suffered an adverse employment action; and finally, the adverse action was causally related to the protected expression." *Williams v. Motorola, Inc*., 303 F.3d

4

1284, 1291 (11th Cir. 2002) (quotation omitted). An action is materially adverse if it might dissuade "a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). In the past, the Eleventh Circuit has construed "the causal link element broadly so that a plaintiff merely has to prove that the protected activity and the adverse action are not completely unrelated." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (quotation, ellipsis, and alteration omitted). A causal connection has been established if the plaintiff shows that "the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (quotations and alterations omitted). "For purposes of a prima facie case, close temporal proximity may be sufficient to show that the protected activity and the adverse action were not wholly unrelated." *Id*. (quotations omitted). Recently, the Supreme Court has declared that the ultimate issue is whether the retaliation would not have occurred but for the protected conduct. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013). *McKitt v. Ala. Alcoholic Beverage Control Bd.*, 2:12-cv-673-WHA (M.D. Ala., 2013)

"A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within [the time allowed by law] or lose the ability to recover for it." *National R.R. Passenger Corp. v. Morgan*, 536

U.S. 101, 110 (2002). Related discrete acts do not form "a single unlawful practice for the purposes of timely filing." *Id*. at 111 (citing 42 U.S.C. § 2000e-6(a)). However, under certain circumstances individual discrete acts may be considered as part of a hostile work environment claim. The Eleventh Circuit explained: In *National Railroad Passenger Corp. v. Morgan*, . . . the Supreme Court set forth general principles to determine whether timely acts can save non-timely acts. It held that discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. The limitations period begins running the day the discrete act occurs. In contrast, hostile work environment claims continue to occur over time. Thus, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability if an act relating to the claim occurred within the filing period.

Where the discrete act is sufficiently related to a hostile work environment claim so that it may be fairly considered part of the same claim, it can form the basis for consideration of untimely, non-discrete acts that are part of the same claim. The pivotal question is whether the timely discrete acts are sufficiently related to the hostile work environment claim. *Chambless v. Louisiana-Pacific Corp*., 481 F.3d 1345, 1349-50 (11th Cir. 2007) (quoting *Morgan*, 536 U.S. at 113) (internal quotations omitted). To determine whether the discrete acts are part of a hostile-work environment claim, the court considers whether the discrete acts involve "the

6

same type of 'discriminatory intimidation, ridicule, and insult'" as the hostile work environment claim. *Id*. (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993)); see also *McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008)("[D]iscrete acts . . . must be challenged as separate statutory discrimination and retaliation claims;" they "cannot be brought under a hostile work environment claim that centers on discriminatory intimidation, ridicule, and insult." (citing *Morgan*, 536 U.S. at 111-13, 116)) (internal quotations omitted). Odom v. Holder, 2:11-cv-3086-SLB (N.D. Ala., 2014)

## D. Retaliation in the post-employment context.

In order to establish a claim for retaliation, a plaintiff must show that: (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that the adverse employment action would not have occurred but for the protected activity. *Univ. of Texas Sw. Med. Ctr. v. Na*ssar, 570 U.S. 338, 360 (2013). The causal relationship element may be established by circumstantial evidence, including that the adverse action followed closely in time after the plaintiffs engaged in protected activity. *Gordon v. NY City Bd of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). To prove causation, a plaintiff must demonstrate that the protected activity and the adverse action were not "entirely unrelated." *Goldsmith v. Bagby Elevator Co., Inc*., 513 F.3d 1261, 1277 (11th Cir. 2008) at 1278 (noting other cases using the terms "wholly unrelated" and "completely unrelated"). "[T]o

7

show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Id.* (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). If the plaintiff relies on proximity to establish the causal element of a prima facie retaliation case, the employer's knowledge of the employee's protected activity and the adverse action must be "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (stating that an adverse action taken twenty months after a protected activity "suggests, by itself, no causality at all"). Applying the "very close" standard from *Clark Cty. Sch. Dist.*, 532 U.S. at 273, we have concluded that a "three month period between the [protected activity] and the [adverse action] does not allow a reasonable inference of a causal relation[.]" *Higdon v. Jackson,* 393 F.3d 1211, 1221 (11th Cir. 2004). See also *Webb-Edwards v. Orange Cnty. Sheriff's Officer*, 525 F.3d 1013, 1029 (11th Cir. 2008) (concluding that a six-month separation was insufficient); *Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir. 2007) (concluding a three-month separation was insufficient). This is consistent with other circuits that have faced the issue. See, e.g., *Richmond v. ONEOK*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient); *Hughes v. Derwinski,* 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four-month period insufficient). *Borden v. Cheaha Reg'l Mental Health Ctr., Inc*., No. 18-11392 (11th Cir., 2019)

8

Temporal proximity concerns may arise in situations where retaliatory conduct is alleged to have occurred after the employee separates from the employer. Nonetheless (particularly with respect to failure to rehire cases), courts have found temporal proximity to exist in the former employer-employee relationship, notwithstanding the considerable passage of time between the protected activity and the retaliatory conduct, building upon the wealth of cases which have held that temporal proximity between the protected activity and the adverse action should be measured from the earliest opportunity the employer has to retaliate against the (former) employee.

In *Robinson v. Shell Oil Co*., 519 U.S. 337, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997), the Supreme Court unanimously concluded that the Title VII's anti-retaliation provision referencing employees was ambiguous with respect to the scope of its coverage and should be read to encompass former employees in order to further "a primary purpose of anti-retaliation provisions: Maintaining unfettered access to statutory remedial mechanisms. " *Robinson* at 346.

In *Burlington Northern & Santa Fe Ry. v. White,* 548 U.S. 53 (2006), the Supreme Court, building upon Robinson, held that the anti-retaliation provision of Title VII is not limited to discriminatory actions that affect the terms and conditions of the plaintiff's employment. *Id*. at 68. The court reasoned that "[a] provision limited to employment-related actions would not deter the many forms that effective retaliation

9

can take. Hence, such a limited construction would fail to fully achieve the antiretaliation provision's "primary purpose," namely, "[m]aintaining unfettered access to statutory remedial mechanisms." Id. at 64 (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 346,117 S.Ct. 843, 136 L.Ed.2d 808 (1997)).

Burlington Northern held that"[t]o prevail on a claim for retaliation under Title VII, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which ... means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Kessler* at 207 (quoting White at 68). As set forth below, courts have found that there are many contexts in which reasonable workers might be dissuaded from engaging in protected activity if they know their employer will take adverse action against them following their separation from the employer.

Here Stewart engaged in two (2) separate protected activities (1) the filing of her EEOC charge in June 2016 after the sexual harassment by Jones Utility's Superintendent Keith Day which has yet to be addressed and (2) participating in her sister's, Mandy Powrzanas ("Powrzanas") ADA lawsuit against Jones Utility in December 2017 by providing audio recordings between Stewart and R. Jones that Powrzanas produced in discovery. Jones Utility and R. Jones retaliated against Stewart for asserting her rights and for assisting Powrzanas in her ADA lawsuit by filing a retaliatory Jefferson County lawsuit in January 2018.

10

**E. Statement of Facts giving rise to hostile work environment claim and discrete retaliatory acts under EEOC Charge 420-2018-01303.**

   a. **Hostile Work Environment**

1. June 01, 2016, Stewart filed her EEOC Charge regarding the sexual harassment by Keith Day.

2. June 03, 2016, Stewart notified R. Jones that she had filed an EEOC Charge.

3. Between June 03, 2016 and November 10, 2016 R. Jones and P. Jones made several visits to the EEOC and met with investigators to "find out" what Stewart needed to do to "drop the EEOC Charge" against Jones Utility.

4. R. Jones and P. Jones constantly badgered and harassed Stewart and Stewart's husband, Steven Stewart ("S. Stewart") about calling the EEOC, going to the EEOC and writing a letter to the EEOC to drop the charge against Jones Utility. (Exhibit 1 – Email Ltr from Jones Utility Termination, Email Ltr from Jones Utility Termination (2), Ltr from Jones Utility Termination, COBRA, COBRA (2)) (Exhibit 2 – Recordings Shawna_Ricky EEOC_08022016, Shawna_Ricky_08062016, Shawna-Ricky EEOC-Insurance, Shawna-Ricky EEOC-Insurance (2))

5. R. Jones and P. Jones made Stewart file Jones Utility's Respondent Statement to her claim as well as all necessary paperwork and send back to the EEOC. (Doc. 13, ¶23,25,26,27,28,29)

6. R. Jones and P. Jones threatened to terminate Stewart if she proceeds on with the EEOC process and subsequently filed a lawsuit. (Exhibit 1 – Email Ltr from Jones Utility Termination, Email Ltr from Jones Utility Termination (2), Ltr from Jones Utility Termination, COBRA, COBRA (2)) (Exhibit 2 – Recordings Shawna_Ricky_08062016)

7. Stewart told R. Jones and P. Jones that the harassment was making her sick and was unbearable. (Exhibit 1 – Email Ltr from Jones Utility Termination, Email Ltr from Jones Utility Termination (2), Ltr from Jones Utility Termination, COBRA, COBRA (2)) (Exhibit 2 – Recordings Shawna_Ricky EEOC_08022016, Shawna_Ricky_08062016, Shawna-Ricky EEOC-Insurance, Shawna-Ricky EEOC-Insurance (2)) (Doc. 13, ¶31)

8. Stewart was working a reasonable accommodation of working after hours until that reasonable accommodation was rescinded on November 10, 2016. (Doc 13, ¶33)

9. On November 10, 2016, Stewart received a letter stating she would no longer be allowed to work after hours and her position had been filled by

12

another person.  She would be continued on a leave of absence without pay.  (Doc. 13, p.39)

10. This letter was sent via email.  R. Jones attorney, Trip Umbach, was copied on the letter and was an active participant in the incident. (Exhibit 1 – Email Ltr from Jones Utility Termination, Email Ltr from Jones Utility Termination (2), Ltr from Jones Utility Termination, COBRA, COBRA (2)) (Exhibit 2 – Recordings Shawna-Ricky EEOC-Insurance, Shawna-Ricky EEOC-Insurance (2)) (Hearing Transcript p.4, l.21-24, p.42, L.14-25, p.43, L.1-14)

11. Between November 10, 2016 and March 1, 2017, R. Jones and P. Jones continued to harass Stewart regarding her pending EEOC Charge.

12. Some of the harassment was through the treats of retaliation through her then attorney, Adam Porter.

13. On December 12, 2016, R. Jones made threats to Stewart's brother in law about Stewart and Powrzanas. (Doc. 13, ¶36-43)

14. In or around February 2017, Jones Utility cancelled Stewart's health and dental insurance after terminating her. (Doc. 13, ¶44)

15. In or around March 1, 2017, Stewart contacted R. Jones to discuss the deficient COBRA paperwork she had received after being terminated. (Doc. 13, ¶45-46)

13

16. R. Jones stated that he and his attorney, Trip Umbach, would need confirmation that she was not "suing" him before he could provide her with the requested paperwork. (Doc. 13, ¶47-50) (Hearing Transcript p.4, l.21-24, p.42, L.14-25, p.43, L.1-14)

17. Jones stated that in order for Stewart to get insurance that "his attorney" would want a letter stating she wasn't proceeding with the EEOC process or filing a lawsuit. (Exhibit 1 – Email Ltr from Jones Utility Termination, Email Ltr from Jones Utility Termination (2), Ltr from Jones Utility Termination, COBRA, COBRA (2)) (Exhibit 2 – Recordings Shawna_Ricky EEOC_08022016, Shawna_Ricky_08062016, Shawna-Ricky EEOC-Insurance, Shawna-Ricky EEOC-Insurance (2))

18. Stewart had to secure health and dental insurance for her family so therefore, she contacted the undersigned who was now representing her and requested that a letter be sent.

19. Stewart believed that R. Jones would not have sent the necessary documents had she not provide said letter.

20. After receiving the letter, Trip Umbach called the human resources person at the City of Kimberly where Stewart's husband worked and provided the necessary documents for Stewart to get health and dental insurance. (Exhibit 1 – Email Ltr from Jones Utility Termination, Email Ltr from

14

Jones Utility Termination (2), Ltr from Jones Utility Termination, COBRA, COBRA (2)) (Exhibit 2 – Recordings Shawna_Ricky EEOC_08022016, Shawna_Ricky_08062016, Shawna-Ricky EEOC-Insurance, Shawna-Ricky EEOC-Insurance (2)) (Hearing Transcript p.4, l.21-24, p.42, L.14-25, p.43, L.1-14)

21. Stewart received her right to sue on March 24, 2017 but did not file a lawsuit because of the threats of not allowing her to get insurance for her family by R. Jones.

b. **Retaliation**

1. Powrzanas filed her ADA lawsuit in or around June 2017.

2. In or around August 2017, Powrzanas identified Stewart as a witness.

3. In or around December 2017, Stewart provided Powrzanas with some recordings of Stewart and Jones that Powrzanas provided to the defense in discovery.

4. Immediately following the production of those recordings, R. Jones filed the retaliatory lawsuit that was threatened against Stewart back on November 18, 2016. (Doc. 13, ¶55)

5. R. Jones followed through with what he had threatened to do in numerous phone calls and in the body cam video of Officer Rodney Powrzanas which

was "counter back", "if y'all are going to sue me, then I'm going to sue

y'all", "I was just waiting to get y'alls papers so I could file mine".

## III.   Count Three alleges a discrete act under Title VII that is timely filed under EEOC Charge 420-2018-01303.

Retaliation in the post-employment context courts have found that there are many contexts in which reasonable workers might be dissuaded from engaging in protected activity if they know their employer will take adverse action against them following their separation from the employer.

Here R. Jones and Jones Utility retaliated against Stewart for asserting her rights regarding the sexual harassment. Equitable tolling is a legal principle evolved from the common law of equity. Equitable tolling states that the statute of limitations will not bar a claim if the plaintiff, despite reasonable care and diligent efforts, did not discover the injury until after the limitations period had expired. The doctrine of equitable tolling means only that the running of the statute is suspended, not that the limitations period begins over again. Equitable tolling also means that a person is not required to sue within the statutory period if he cannot in the circumstances reasonably be expected to do so. The Supreme Court held that equitable tolling requires a party to satisfy two distinct elements: (1) diligent pursuit of its rights and (2) extraordinary circumstances beyond its control preventing timely filing. Here, Stewart (1) diligently pursued her rights until March 1, 2017.  On March 1, 2017, R.

16

Jones gave Stewart and (2) ultimatum, drop your EEOC charge, do not file a lawsuit and provide written proof to Trip Umbach or I [R. Jones/Jones Utility] will not provide you with the paperwork you need to secure health and dental insurance for your family.  Stewart relied on R. Jones' threat to her own detriment because she provided the written letter to Trip Umbach, stating she would not pursue her rights in order to obtain health and dental insurance for her family, and she did not pursue her rights once she received her right to sue letter on March 24, 2017. (Hearing Transcript p.4, l.21-24, p.42, L.14-25, p.43, L.1-14) However, R. Jones and Jones Utility retaliated against and sued her in circuit court in January 2018.

**IV.**   **Count Four alleges a discrete retaliatory act under the ADA that is timely filed under EEOC Charge 420-2018-01303.**

It is well established that "'a lawsuit ... may be used by an employer as a powerful instrument of coercion or retaliation'" and may dissuade employees from pursuing discrimination claims. *EEOC v. Outback Steakhouse of Florida, Inc.,* 75 F. Supp. 2d 756, 757-58 (N.D. Ohio 1999) (quoting *Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731, 740-41 (1983)) Some courts have held that even where an employer has an otherwise legitimate right to bring claims against an employee, it nonetheless may be held liable for doing so if the employee can show that that the lawsuit was brought to retaliate against her for asserting a protected right.

17

For example, in *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 367 (DC Ct. Appeals 1993). A former employee brought discrimination and retaliation claims against her employer. The retaliation claim was based upon the employer foreclosing on the employee's property (which served as collateral on a loan to the employee) after the employee complained of discrimination. The court first noted that, while the employer had the legal right to foreclose, the statute barring retaliation at issue "contains no safe harbor for otherwise lawful acts done for an improper retaliatory purpose." The *Arthur Young* court analogized to federal courts interpreting antiretaliation provisions of Title VII of the Civil Right Act: "Under these Title VII decisions, the fact that the employer may have a valid legal claim does not preclude the employee from establishing that the employer's motive in asserting the claim was impermissible retaliation." *Id*. at 368 (citing *EEOC v. Levi Strauss & Co.,* 515 F. Supp., 640, 644 (N.D. 11. 1981); *EEOC v. Virginia Carolina Veneer Corp*., 495 F. Supp. 775, 777-778 (W.D.Va 1980). See also *Spencer v. Int'l Shoppes, Inc*., No. 06-CV-2637, 2010 U.S. Dist. LEXIS 30912, 32-33 (E.D.N.Y. Mar. 29, 2010) ("Even if the litigation is not frivolous, it still may be considered retaliatory if motivated, even partially, by a retaliatory animus.").

Stewart filed her EEOC charge on February 15, 2018. (Doc. 13, p.30) Stewart listed the latest discriminatory/retaliatory event as January 11, 2018.   R. Jones and Jones Utility filed the circuit court lawsuit on January 11, 2018 in retaliation for

Stewart's participation in Powrzanas' ADA lawsuit. The filing of the circuit court lawsuit is itself a retaliatory act by R. Jones and Jones Utility against Stewart because she assisted Powrzanas in her ADA lawsuit by providing the audio recordings that Powrzanas produced in discovery.

## V.   Counts One and Two are viable Hostile Work Environment claims under the Continuing Violation Doctrine, Equitable Tolling and Equitable Estoppel.

Here R. Jones, P. Jones and Jones Utility created a hostile work environment for Stewart for asserting her rights regarding the sexual harassment. Stewart was constantly harassed and badgered from June 3, 2016, when the Joneses discovered that Stewart had filed her EEOC charge, until March 1, 2017 when Stewart was officially terminated from Jones Utility.   Equitable tolling is a legal principle evolved from the common law of equity. Equitable tolling states that the statute of limitations will not bar a claim if the plaintiff, despite reasonable care and diligent efforts, did not discover the injury until after the limitations period had expired. The doctrine of equitable tolling means only that the running of the statute is suspended, not that the limitations period begins over again. Equitable tolling also means that a person is not required to sue within the statutory period if he cannot in the circumstances reasonably be expected to do so. The Supreme Court held that equitable tolling requires a party to satisfy two distinct elements: (1) diligent pursuit

19

of its rights and (2) extraordinary circumstances beyond its control preventing timely filing.

Here, Stewart (1) diligently pursued her rights until March 1, 2017.  On March 1, 2017, R. Jones gave Stewart an (2) ultimatum, drop your EEOC charge, do not file a lawsuit and provide written proof to Trip Umbach or I [R. Jones/Jones Utility] will not provide you with the paperwork you need to secure health and dental insurance for your family.  Stewart relied on R. Jones' threat to her own detriment because she provided the written letter to Trip Umbach stating she would not pursue her rights in order to obtain health and dental insurance for her family, and she did not pursue her rights once she received her right to sue letter on March 24, 2017. (Hearing Transcript p.4, l.21-24, p.42, L.14-25, p.43, L.1-14) However, R. Jones and Jones Utility retaliated against and sued her in circuit court in January 2018.

Equitable estoppel is also applicable in the instant matter. Equitable estoppel is a defensive doctrine preventing one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, which resulted in the other person being injured in some way. Stewart was manipulated by R. Jones into not pursuing her rights under her first EEOC claim in order to obtain the necessary paperwork from Jones Utility and its lawyer, Trip Umbach, to secure health insurance so that R. Jones

could file the retaliatory circuit court lawsuit against her to cause her harm. (Hearing Transcript p.4, l.21-24, p.42, L.14-25, p.43, L.1-14)

## VI.    Stewart's response to Defendants' Motions to Dismiss.

Stewart incorporates and adopts by reference all of her previous arguments made in her response to Defendants motions to dismiss Document 20.

**WHEREFORE PREMISES CONSIDERED,** Stewart respectfully requests that this Honorable Court grant her Motion for Reconsideration.

Respectfully submitted,

/s/ Scott T. Morro
Scott T. Morro (asb-4954-c30m)
*Attorney for Plaintiff*
Morro Law Center, LLC.
PO Box 1644
Gardendale, AL 35071
Phone: (205) 631-6301
Email: morrolawcenter@bellsouth.net

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2019, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to the following:

Arnold W. Umbach, III
STARNES DAVIS FLORIE LLP
100 Brookwood Place, Seventh Place
Birmingham, AL 35259
tumbach@starneslaw.com

/s/ Scott T. Morro
Scott T. Morro

21